IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BILLY J. FINNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16−cv−0962−MJR |
| | ) |
| ALFONSO C. DAVID, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| BLAKE WOODS, | ) |
| GURPREET SINGH BAMBRA, | ) |
| JEFFREY DENISON, | ) |
| LORA LECRANE, | ) |
| CAROLL AQULAR, | ) |
| DEBBIE PERKINS, and | ) |
| DORSEY MCGEE | ) |
| | |
| Defendants. | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Billy Finney, an inmate in Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests declarative relief and $10,000,000 in damages. (Doc. 1, p. 17). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) **Grounds for Dismissal**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Plaintiff began feeling ill on March 12, 2016. (Doc. 1, p. 7). He experienced chest pains, shortness of breath, headaches, and night sweats. (Doc. 1, p. 7). He also had a lump or knot on his scalp, near the back of his head. (Doc. 1, p. 7). Plaintiff met with L.P.N. McGee, who checked vital signs and examined Plaintiff's lungs. (Doc. 1, p. 7).

McGee asked N.P. Woods for a second opinion. (Doc. 1, p. 7). Woods scheduled x-rays for March 15, 2016, and gave Plaintiff a pain reliever. (Doc. 1, p. 7). Plaintiff's x-ray was ultimately cancelled and rescheduled for March 16, 2016. (Doc. 1, p. 7).

However, Plaintiff began feeling worse on March 15, 2016. (Doc. 1, p. 7). Plaintiff's symptoms included fever, sweat, headache, paleness, and excruciating pain. (Doc. 1, p. 7). He also alleges that the knot on his head was bigger. (Doc. 1, p. 7). Plaintiff was admitted to the health care unit. (Doc. 1, p. 7). Plaintiff's x-ray showed a large mass in his right lung. (Doc. 1, p. 7). Dr. David spoke to Plaintiff about the mass, but when Plaintiff inquired about the lump on his head, David told Plaintiff that the lump was nothing more than fatty tissue and needed no medical attention. (Doc. 1, p. 7). David repeated this assertion two weeks later when Plaintiff saw him for tuberculosis testing. (Doc. 1, p. 8). Plaintiff requested that David at least drain the lump, but David refused. (Doc. 1, p. 8).

Plaintiff continued to experience headaches and chest pains. (Doc. 1, p. 8). David referred him to Dr. Gurpreet Singh Bambra, a lung specialist, at the Carbondale Hospital. (Doc. 1, p. 8). Bambra ordered PT scans and a biopsy. (Doc. 1, p. 8). Plaintiff pointed out the lump on the back of his head to Bambra; Bambra stated that a CT scan needed to be performed on the lump, but that he lacked David's approval to do so. (Doc. 1, p. 8). Bambra ultimately ordered a biopsy of Plaintiff's lungs. (Doc. 1, p. 8). When Plaintiff returned to the hospital for a biopsy, he once again asked about the

lump on his head, but Bambra told him he still needed approval from Shawnee before he could do anything about the lump. (Doc. 1, p. 9).

Plaintiff saw David again at Shawnee and confronted him with Bambra's assessment that the lump was filled with fluid and a CT scan needed to be done. (Doc. 1, p. 9). R.N. Aqular was present at this meeting. (Doc. 1, p. 9). Once again David stated that the lump was nothing more than fatty tissue, and reiterated his intention not to treat it. (Doc. 1, p. 9).

Plaintiff was eventually diagnosed with Blastomycosis, a disease where fungus grows in the lungs. (Doc. 1, p. 9). After receiving a diagnosis, Plaintiff once again brought up the lump on his head with David. (Doc. 1, p. 9). David refused to treat it, and discounted Plaintiff's complaints of headaches and chest pains. (Doc. 1, p. 9). David did, however, give Plaintiff Tylenol 3 for his pain. (Doc. 1, p. 9).

Plaintiff began coughing up blood. (Doc. 1, p. 9). David told him this was a normal reaction to the treatment. (Doc. 1, p. 9). This symptom persisted approximately 2-3 months. (Doc. 1, p. 9).

Bambra referred Plaintiff to Dr. Linda Bobo, an infectious disease specialist. (Doc. 1, p. 10). Bobo asked Plaintiff about the lump on June 2, 2016. (Doc. 1, p. 10). Bobo ordered a CT scan, which showed an infection that extended through the skin into Plaintiff's skull. (Doc. 1, p. 10). Plaintiff was scheduled for emergency surgery on June 7, 2016. (Doc. 1, p. 10). Portions of Plaintiff's skull were removed, and a metal plate inserted. (Doc. 1, p. 10). Plaintiff alleges that as a result of the infection and surgery, he

Page **4** of **15**

now suffers tremors, numbness, foggy vision, and lightheadedness. (Doc. 1, p. 10). Two doctors at Carbondale Hospital told Plaintiff he was lucky to be alive. (Doc. 1, p. 11).

Plaintiff also alleges that his lung condition, Blastomycosis is caused by a fungus that is found in soil and/or the drinking water at Shawnee Correctional center. (Doc. 1, p. 11). Plaintiff alleges that there are several other cases of the disease at the prison. (Doc. 1, p. 11).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into two counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claim survives threshold review.

**Count 1 – David, Woods, Bambra, Denison, LeCrane, Aqular, and McGee were deliberately indifferent to Plaintiff's lump on the back of his head, in violation of the Eighth Amendment**

The following claim does not survive threshold review:

**Count 2: David, Woods, Bambra, Denison, LeCrane, Aqular, and McGee were deliberately indifferent to Plaintiff's Blastomycosis in violation of the Eighth Amendment**

Turning first to **Count 1**, in order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an

ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Plaintiff has clearly stated a deliberate indifference claim regarding the lump on his head against David, Denison, and LeCrane. Plaintiff alleges that he complained about the lump itself several times, and that each time, David specifically told him that he would neither examine nor treat the lump. Plaintiff further alleges that when another doctor finally examined the lump, it proved to be a fairly serious infection that required surgery to resolve. Plaintiff has pleaded sufficient facts to make it plausible that he suffered from a serious medical need and that David ignored his condition. Therefore his case against David will be allowed to proceed.

As to Defendants Denison, the Warden of Shawnee, and LeCrane, the Director of nursing, Plaintiff has alleged that they knew about the deliberate indifference and refused to intervene. Specifically, Plaintiff alleges that he wrote emergency grievances to Denison that went ignored. He also alleges that his mother called and spoke to LeCrane. Although Defendants must be personally involved in the allegedly constitutional violation for liability to attach, the Seventh Circuit has held that in a deliberate indifference case, a grievance or other complaint can potentially establish that a Defendant approved, condoned or turned a blind eye to a constitutional violation. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Plaintiff's allegations make it plausible that both Denison and LeCrane had notice of David's alleged deliberate indifference and refused to intervene. At this stage, that is sufficient to state a claim.

But all of the other Defendants must be dismissed at this time. Plaintiff has named Wexford Health Sources in the caption of his Complaint, but failed to include any allegations against it in the body of the Complaint. Normally, this would entitle Wexford to a dismissal without prejudice. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not

Page **7** of **15**

sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

However, Plaintiff has also filed a Motion "to Add On to Complaint," explaining that Wexford has a policy requiring inmates to request sick call and pay a co-pay. (Doc. 8).  The Motion further alleges that Wexford is responsible as the employer of the Defendants.  Even if the Court were to permit this amendment, which it will not for reasons explained further below, Plaintiff's claim against Wexford would still fail.  Plaintiff has alleged that he presented his condition for treatment multiple times, only to be ignored.  He has not alleged any facts that would tend to suggest that the alleged policy regarding sick call slips and copays *caused* the deliberate indifference.  Plaintiff's claims do not turn on his access to healthcare, rather they allege that Dr. David refused to treat him during appointments and visits.  Therefore, Wexford would not be responsible for any of Plaintiff's damages.  Additionally, there is no respondeat superior liability under § 1983.  *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 795-96 (7th Cir. 2014).  At present, the Court dismisses Wexford without prejudice for failure to include any allegations against them in the body of the Complaint.

The Court also cannot find any allegations against Debbie Perkins in the body of the Complaint.  For the same reasons listed above, Perkins will also be dismissed without prejudice because the Complaint, as currently drafted, does not put her on notice of any claims against her.

Although Plaintiff does mention Woods, Bambra, Aqular, and McGee in the body of the Complaint, the allegations against them fail to state a claim upon which relief can be granted. Plaintiff alleges that Woods was called to give McGee a second opinion, and that Woods examined Plaintiff and ordered an x-ray. Plaintiff further alleges that Woods did not chart his lump until April. But Plaintiff never alleges that he told Woods about the lump in March and was denied treatment; in fact he specifically alleges that Woods was brought in to give a second opinion on his lungs. He never alleges that Woods refused to examine the lump or said anything about it at all. Medical providers are not liable just because a condition is present when they examine a prisoner.

The same is true for McGee. Although Plaintiff alleges that she examined him during a time when he had the lump, he never alleges that he specifically requested treatment for it and was denied. McGee arranged for Plaintiff to have follow-up medical care for his lung condition. It is plausible that she thought the lung condition was the more serious condition, and acted accordingly. Plaintiff alleges that she sought a second opinion for his symptoms and scheduled a follow up visit. Plaintiff has not provided any facts that would make a claim of deliberate indifference plausible as to McGee

As to Aqular, Plaintiff does nothing more than allege that she was present on one occasion when David refused to provide treatment for the lump. Plaintiff does not allege that he specifically asked Aqular for treatment and she denied him. He just

alleges that she was there. Although it is possible to establish liability if a defendant approves, condones, or turns a blind eye to a constitutional violation, none of the nurse defendants had the authority to over-rule David, the doctor. David did not need their approval to act or answer to them when he refused to act. There is no allegation that the nurses could have performed either of the two courses of treatment that Plaintiff says he should have gotten: 1) either have the lump drained or; 2) scheduled a CT scan. The nurses referred Plaintiff to the doctor quickly when he presented with symptoms back in March and were present for other aspects of his care. Neither of those things is enough to establish liability and without a specific allegation that Plaintiff requested some measure of treatment within their authority to provide, Plaintiff has failed to state a claim upon which relief can be granted.

As to Bambra, Plaintiff's suit against him fails because Plaintiff has not alleged that Bambra is a state actor; whether a party is a state actor is a determining factor as to whether a plaintiff can bring a suit against them under § 1983 *Rodriguez v. Plymouth Ambulance Services, Inc.*, 577 F.3d 816, 822-30 (7th Cir. 2009); *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Alternatively, Plaintiff has also failed to allege that Bambra was deliberately indifferent. Plaintiff's Complaint identifies Bambra as a pulmonary specialist, meaning that Plaintiff's lump/infection was not in his area of expertise. There is no allegation that Plaintiff was referred to Bambra for the purpose of treating the lump/infection. Bambra's claim that he did not have authority to treat Plaintiff, which Plaintiff does not contradict, would also be a bar to recovery. Plaintiff

is a ward of the state, and Bambra cannot undertake more than the state authorizes him to do. For all of the above reasons, Bambra must also be dismissed without prejudice.

As to **Count 2**, Plaintiff's claim here must be dismissed for failure to state a claim. Plaintiff's statement of facts makes any claim that Defendants were deliberately indifferent to his Blastomycosis implausible. On the contrary, Plaintiff's allegations show that the Defendants were concerned about Plaintiff's lung symptoms from his initial appointment and that they ordered treatment and testing, admitted him to the HCU, referred him to outside specialists, and followed their recommendations. There is no allegation that Defendants delayed treatment or ordered treatment so far outside standard medical practice so as to be deliberately indifferent. In fact, Plaintiff identifies no aspect of the Blastomycosis treatment that was allegedly deficient.

At one point, Plaintiff alleges that he got Blastomycosis because it was in the soil and water around the prison, implying that Defendants should have kept it out of the soil and water. However, a review of the Centers for Disease Control website reveals that the fungus that causes Blastomycosis is found in the soil of the Mississippi and Ohio River valleys, an area that includes the entire state of Illinois and most of the surrounding states. http://www.cdc.gov/fungal/diseases/blastomycosis/causes.html (last accessed October 13, 2016). Plaintiff's allegation that the Defendants should have done something to keep the fungus out of the water and soil is just frivolous. There is nothing anyone can do to remove the fungus from the environment. Even if there was,

Plaintiff has not alleged that Defendants have any involvement with the water supply at the prison. Thus Count 2 will be dismissed with prejudice.

## Pending Motions

Since filing the Complaint, Plaintiff has filed two motions "to add on to the Complaint." (Doc. 6) (Doc. 8). Pursuant to local rule 15.1, the Court does not accept piecemeal amendments to the Complaint; in order to amend a complaint, a party must send a proposed amended complaint to the presiding judge with all new material underlined. That means that, should Plaintiff wish to amend his complaint, he must submit a proposed amended complaint that includes both the claims currently pending and any new claims. As both of Plaintiff's motions only contain the things he wishes to add, they fail as amended complaints. The Court notes that having reviewed the motions, there are unlikely to succeed in any event. Plaintiff's Complaint already contains a request for $10,000,000 in damages, the Court has already construed the original Complaint as containing claims based on Plaintiff's Blastomycosis and determined that those claims fail, and Plaintiff's proposed theories against Wexford are not viable. The Court **DENIES** Plaintiff's Motions to add onto the Complaint, although the denial is without prejudice to Plaintiff submitting a proper amended complaint. (Doc. 6) (Doc. 8).

Plaintiff's Motion for counsel is referred to a magistrate judge for disposition. (Doc. 2).

**Disposition**

**IT IS ORDERED** that **Count 1** survives threshold review. However, Defendants Wexford, Woods, Bambra, Aqular, Perkins and McGee are **DISMISSED** from Count 1 without prejudice.

**IT IS FURTHER ORDERED** that **Count 2** shall be **DISMISSED with prejudice** against all Defendants.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants David, Denison and LeCrane: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be

retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: October 14, 2016**

> s/ MICHAEL J. REAGAN
> **U.S. District Judge**